UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALMETHIA MIDDLETON, | 06 CV 01711 (VM) |
| Plaintiff, | **DEFENDANT'S LOCAL RULE 56.1** |
| -against- | **STATEMENT** |
| METROPOLITAN COLLEGE OF NEW YORK, | |
| Defendant. | |

Defendant Metropolitan College of New York ("MCNY"), by and through its counsel of record, respectfully submits the following statement of material facts as to which there is no genuine dispute pursuant to Rule 56.1(a) of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York.[1]

Information about the Parties

1.     Plaintiff Almethia Middleton is a resident of the State of New Jersey and resided there at the time of commencement of this action.  (Pl. Tr. 13:15-23.)

2.     Metropolitan College of New York ("MCNY") is a not-for-profit college headquartered at 75 Varick Street in New York, New York. (Mack Dec. ¶2.)

Background

3.     Metropolitan College of New York ("MCNY") hired Plaintiff Almethia Middleton in 2001 to work as an administrative assistant in the Welfare to Careers Project, also located at 75 Varick Street in New York, New York.  Plaintiff worked in that capacity at MCNY from 2001 through March 3, 2003. (Ex. A to Brauner Dec., Complaint, ¶¶7, 13; Pl. Tr. 50:3-4; 255:20-25; 256:2.)

---

[1] The facts are undisputed only for purposes of Defendant's Motion for Summary Judgment.

4.      MCNY maintains and distributes to its employees equal opportunity and non-discrimination, non-harassment, non-retaliation policies that prohibit, among other things, harassment and discrimination based on sex, and retaliation.  The policies also provide procedures for reporting such prohibited conduct to MCNY.  MCNY provided Plaintiff with a copy of its employee handbook, which includes these policies, in September 2002.  (Pl. Tr. 86:5-25; 87:2-25; 88:2-7; Latham Dec., ¶3.)

February 13, 2003 Incident

5.      On February 13, 2003, Rae Mack, plaintiff's immediate supervisor, held a meeting of the program staff which consisted of Lamont Williams, Candida Gonzalez, Angienette Minton, Jennifer Lerner, and Ms. Middleton, all of whom were co-workers, reporting directly to Ms. Mack.  (Mack Dec., ¶5; Lerner Dec., ¶2.)

6.      Ms. Mack opened the meeting by stating that she was concerned about tensions among staff members, and that the staff should use the meeting to "air out [their] shit."  (Mack Dec., ¶6; Mack Tr. 26:15; Lerner Dec., ¶2.)

7.      Ms. Mack admitted to using this profanity, and subsequently received a written disciplinary notice relating, in part, to opening the meeting in an unprofessional manner by using profanity.  (Latham Dec., ¶62; Mack Dec., ¶55, Ex. A; Mack Tr. 67:13-18.)

8.      During the February 13, 2003 staff meeting, Lamont Williams, a co-worker of Ms. Middleton, yelled "suck my dick" and "fuck you" at Ms. Middleton.  (Pl. Tr. 124:2-25; 125:2-9; 187:11-25; 188:6-25; 189:2-25; 190:2; Mack Dec., ¶26; Mack Tr. 40:5-10.).

9.     During that meeting, there was a lot of tension, and when Mr. Williams yelled the remarks, he was angry and out-of-control.  (Pl. Tr. 135:23-25; 136:4-6, 8-23; 137:22-23; 138:5-24.)

10.     All witnesses present at that meeting later reported to Susan Latham, MCNY's Human Resources Director, that Ms. Middleton and Mr. William argued during the February 13th staff meeting, and that their argument became heated, and escalated to the point where each was yelling, using epithets, and exchanging vulgar insults with one another. (Mack Dec., ¶¶18-20; Lerner Dec., ¶¶ 3-9; Latham Dec., ¶¶22-27, 53, Ex. C, D; Mack Tr. 41:16-22.)

11.     Prior to that incident, Ms. Middleton had always had a good working relationship with Mr. Williams and he had never behaved in the manner in which he behaved at the February 13, 2003 meeting. (Pl. Tr. 79:23-25; Tr. 80:1-10; 181:9-25; 182:9-11.)

12.     Prior to the February 13, 2003 staff meeting, Mr. Williams also had never propositioned her for sex or requested sexual favors of her, physically touched her, made comments of a sexual nature to her, cursed at her, insulted her or yelled at her.  (Pl. Tr. 181:9-25; 182:2-25; 183:2-7; 137:24-25; 157:20-22; 459:7-15.)

13.     Nor had Ms. Middleton ever felt physically threatened in any way by him. (Pl. Tr. 138:2-4.)

14.      Following the incident on February 13, 2003, Ms. Middleton returned to her office and continued working until approximately 6:00 p.m. that day. (Pl. Tr. 179:12-25; 180:2-9; 196:5-18; Ex. H to Latham Dec., ¶30.)

15.    Ms. Middleton did not see Mr. Williams ever again, following the incident on February 13, 2003. (Pl. Tr. 180:10-25.)

16.    Ms. Middleton believed that she performed her job satisfactorily, following the February 13, 2003 incident, up to and including the date of her termination. (Pl. Tr. 196:5-18.)

17.    Following the incident, after Mr. Williams exited the classroom where the meeting had occurred, Ms. Mack told Mr. Williams to leave the premises for the day, which he did. (Mack Dec., ¶24: Mack Tr. 39:6-10.)

18.    Ms. Mack told Ms. Middleton that she would speak with Susan Latham, MCNY's Human Resources Director. Ms. Mack then reported the incident to Ms. Latham that same afternoon as soon as Ms. Latham returned to the office from a meeting. (Mack Dec., ¶26; Mack Tr. 26:4-20; 27:4-8, 39:20-25; 40:2-10; Latham Dec., ¶4,5.)

19.    Specifically, Ms. Mack told Ms. Latham that, at the February 13th staff meeting, Williams had used vulgar language and profanities --"suck my dick" and "fuck you" -- and that he was so loud that other people in the vicinity heard the commotion and called Security. (Latham Dec., ¶5; Mack Dec., ¶26; Mack Tr. 40:5-10.)

20.    Ms. Mack also stated to Ms. Latham that she felt that Mr. Williams' behavior was inappropriate and that he should be fired as a consequence. (Mack Dec., ¶26; Mack Tr. 41:7-12; Latham Dec., ¶5.)

21.    Based on what Ms. Mack had described to her, Ms. Latham agreed. (Latham Dec., ¶5.)

22.     Ms. Latham asked if Mr. Williams was still on the premises and Ms. Mack informed her that she had instructed Mr. Williams to go home. (Latham Dec., ¶5; Mack Dec., ¶26.)

23.     Consequently, Ms. Latham said that they should meet with Mr. Williams in the morning, at which time she planned to terminate his employment. (Latham Dec., ¶6; Mack Dec., ¶26.)

Mr. Williams' Termination: February 14, 2003

24.     On February 14, 2003, Ms. Latham and Ms. Mack met with Mr. Williams and Ms. Latham terminated him for gross misconduct because of his conduct at the February 13, 2003 meeting (Latham Dec., ¶¶7-8, Ex. B; Mack Dec., ¶29.) [2]

25.     At Mr. Williams' termination meeting, he reported to Ms. Latham, in Ms. Mack's presence, that Ms. Middleton had also used similar vulgar language and profanities, including saying "eat my pussy" to him during the February 13, 2003 staff meeting (Latham Dec., ¶¶7-8, Ex. B; Mack Dec., ¶29.)

26.     When asked by Ms. Latham whether Mr. Williams' assertion was true, Ms. Mack corroborated Williams' assertion. (Latham ¶7, Ex. B; Mack Dec., ¶29; Mack Tr. 46:11-21.)

27.     Ms. Latham determined that Ms. Middleton would have to be disciplined as well for her conduct, but she was unable to meet with Ms. Middleton until Wednesday

---

[2] Excerpts from Plaintiff Almethia Middleton's deposition transcript and Rae Mack's deposition transcript are attached to the Declaration of Lisa M. Brauner, Esq. submitted in support of Defendant's Motion for Summary Judgment as Exhibit B and C, respectively, and are cited as follows: "Pl. Tr.  Page Number:Line Number(s) and Mack Tr. Page Number:Line Number(s)."   All references to "Mack Dec." refer to the Declaration of Rae Mack., dated September 14, 2007.   References to "Latham Dec." refer to the Declaration of Susan Latham, dated September 10, 2007, references to the "Lerner Dec." refer to the Declaration of Jennifer Lerner, dated August 16, 2007.   References to "Brauner Dec." refer to the Declaration of Lisa M. Brauner, Esq., dated September 17, 2007.

February 19th due to Middleton's taking of a vacation day, and the College's closing for a

holiday and inclement weather (Latham Dec., ¶¶10,11.)

February 19th Meeting

      28.    On February 19th, Ms. Latham, Ms. Mack, and Ms. Middleton met.

(Latham Dec., ¶13; Mack Dec., ¶30; Mack Tr. 55:24-25; 56:2-10.)

      29.    Ms. Mack had prepared and intended to give Ms. Middleton a final written

warning concerning Ms. Middleton's conduct at the February 13th staff meeting. (Latham

Dec., ¶18; Mack Dec., ¶30, 31; Mack Tr. 55:24-25; 56:2-10.)

      30.    Ms. Latham questioned Ms. Middleton about her conduct during the

February 13th incident. (Latham Dec., ¶18; Mack Dec., ¶31; Mack Tr. 56:11-18.)

      31.    When Ms. Latham questioned her, Ms. Middleton denied using any

profanity or making vulgar insults directed to Williams, and stated that she had said

nothing at all during the meeting. (Latham Dec., ¶18; Mack Dec., ¶31; Mack Tr. 56:11-

18.)

      32.    Ms. Middleton reported to Ms. Latham that she believed Ms. Mack had

planned the February 13, 2003 incident in an attempt to get her fired. (Latham Dec., ¶15;

Mack Dec., ¶32,33.)

      33.    Ms. Latham told Ms. Middleton and Ms. Mack that she would need to

conduct a further investigation of Ms. Middleton's conduct, and asked each to e-mail her

their versions of what occurred at the February 13, 2003 meeting.  (Latham Dec., ¶19,20;

Mack Dec., ¶34.)

Investigation of Middleton's Conduct at the February 13th Staff Meeting

34.     On February 19th, Ms. Latham met with the other staff members who had attended the February 13th meeting to investigate Ms. Middleton's conduct at that meeting – Candida Gonzalez, Angienette Minton and Jennifer Lerner.  (Latham Dec., ¶22; Lerner Dec., ¶12.)

35.     All of them reported, separately, to Ms. Latham that they had witnessed both Ms. Middleton and Mr. Williams yell harsh words, profanities, curses and insults at one another, that each had said "fuck you" to the other, and that Ms. Middleton had actively engaged in the argument with Mr. Williams. (Latham Dec., ¶22-25, Ex. C.)

36.     Ms. Lerner, a co-worker of Ms. Middleton and Mr. Williams, reported to Ms. Latham that Mr. Williams said "suck my dick" to Ms. Middleton, and that Ms. Middleton had responded by saying "eat my pussy."  (Latham Dec., ¶24; Lerner Dec., ¶5.)

37.     All of the witnesses reported to Ms. Latham that Ms. Mack had tried to calm the situation, but was not able to do so. (Latham Dec., ¶22, Ex. C; Lerner Dec., ¶9.)

38.     Ms. Latham asked all three witnesses to e-mail her their versions of the February 13, 2003 incident, which they did. (Latham Dec., ¶26, Ex. D.)

39.     On Thursday February 20, Ms. Mack e-mailed Ms. Latham her summary of the February 13th incident.  (Latham Dec., ¶27, Ex. F; Mack Dec., ¶34.)

40.     At that time, Ms. Middleton had still not provided her version of the February 13th incident.  (Latham Dec., ¶29, Ex. G.)

Susan Latham's Decision to Terminate Middleton

     41.     On February 21, 2003, after investigating the events of February 13, 2003, Ms. Latham made the decision to terminate Ms. Middleton.  (Latham Dec., ¶28.)

     42.     Ms. Latham believed that the appropriate and just course of action was to terminate Ms. Middleton because of her behavior, consistent with Mr. Williams' termination, as it would be unfair to treat two employees who engaged in similar misconduct, differently. (Latham Dec., ¶28.)

     43.     On Sunday February 23rd, Ms. Latham -- knowing she would be out for jury duty the next day -- e-mailed both Ms. Mack and Ms. Middleton telling them that she had investigated the situation and wanted to meet with them when she returned to the office.   Ms. Latham also reminded Ms. Middleton that she had not received the documentation she had requested.  (Latham Dec., ¶29, Ex. G.)

Ms. Middleton's Allegations of Sexual Harassment

     44.     On February 24, 2003, Ms. Middleton emailed a written statement to Ms. Latham, alleging that Mr. Williams and Ms. Mack had sexually harassed her.  (Ex. H to Latham Dec. and Latham Dec., ¶30, Ex. H.)

     45.     In her statement, Ms. Middleton reported that Mr. Williams yelled "suck my dick you bitch, suck it good" and "began to unzip his pants" and "started to pull down his pants" at the February 13, 2003 staff meeting (Latham Dec., ¶31 and Ex. H to Latham Dec.)

     46.     Ms. Middleton alleged that Ms. Mack also "created a hostile work environment for me" and "[s]exual harassment was demonstrated on her behalf." (Latham Dec., ¶30 and Ex. H to Latham Dec.)

47.     Based on Ms. Middleton's allegations of "sexual harassment," Ms. Latham determined that she should conduct a thorough investigation in accordance with MCNY's sexual harassment policy before terminating Ms. Middleton. (Latham Dec., ¶¶33-34, Ex. I.)

48.     Ms. Latham, who was still out on jury duty, responded to Ms. Middleton by e-mail the next day, February 25th, indicating that she needed to investigate the situation further based on the assertions made in Ms. Middleton's statement, and would meet with Ms. Middleton as soon as she was released from jury duty. (Ex. I to Latham Dec.)

49.     Ms. Latham conducted an investigation of Ms. Middleton's allegations of sexual harassment. (Latham Dec., ¶¶35, 36.)

50.     Ms. Latham met with Ms. Middleton who reported that she believed she was sexually harassed when Mr. Williams said "suck my dick" and gestured toward his zipper; that his comment was a request for a sexual favor. (Latham Dec., ¶¶35, 36.)

51.     Ms. Latham asked Ms. Middleton if there had been any previous incidents of "sexual harassment" or comments before February 13th, and Middleton said no. (Latham Dec., ¶¶35, 36; Pl. Tr. 79:23-25; Tr. 80:1-10; 181:9-25; 182:9-11.)

52.     Ms. Middleton also reported to Ms. Latham that she believed that Ms. Mack "set up" the February 13th meeting to get her fired. (Latham Dec., ¶¶37-38.)

53.     Ms. Latham also met, separately, with Ms. Mack concerning Ms. Middleton's allegations of sexual harassment, (Latham Dec., ¶39; Mack Dec., ¶36-37), and Ms. Mack said to Ms. Latham that she interpreted Mr. Williams' comment "suck my

dick," as a remark uttered in anger or frustration, not as a sexual request. (*Id.*; Mack Dec., ¶38.)

54.    Ms. Latham then re-interviewed the other three attendees of the February 13th staff meeting, all of whom reported that they did not remember seeing Mr. Williams try to pull down or unzip his pants. (*Id.* at ¶40-42, Ex. C; Lerner Dec., ¶13.)

55.    Ms. Lerner reported to Ms. Latham that Mr. Williams looked angry when the staff meeting began, and that she understood Mr. Williams' comment to Ms. Middleton –"suck my dick"-- to be insulting and sarcastic, but not a sexual request. (*Id.* at ¶41; Lerner Dec., ¶6.)

56.    Ms. Lerner also reported that Ms. Middleton's comment in reply -- "eat my pussy" -- was said in the same tone as Mr. Williams' comment. (Latham Dec., ¶41; Lerner Dec., ¶6.)

57.    Ms. Gonzalez also reported to Ms. Latham that she had interpreted Mr. Williams' remark to Ms. Middleton as an insult, rather than a sexual request. (Latham Dec., ¶41, Ex. D.)

58.    Based on her investigation, Ms. Latham concluded that there was no basis for Ms. Middleton's sexual harassment allegations. (Latham Dec., ¶44.)

59.    Furthermore, Ms. Latham believed that, although Mr. Williams' behavior was inappropriate and insulting, he had already been fired, so there was no corrective action that could be addressed to him. (Latham Dec., ¶46; Mack Dec., ¶42.)

60.    Ms. Middleton believed that she was terminated for a "personal" reason— because Mr. Williams had been fired and Mr. Williams was Ms. Mack's best friend and/or because Ms. Middleton went over Ms. Mack's head and directly to Ms. Latham,

ignoring the chain of command. (Pl. Tr. 231: 4-11; 231:12-25; 232:2-5; 249:13-17; 238:15-25; 239:2-3; 205:13-17; 206:6-10, 19-25; 207:3-25; 208:2-7; 251:9-21.)

61.     On March 3, 2003, Ms. Latham met with Ms. Mack and Ms. Middleton on to inform Ms. Middleton of her conclusions regarding the allegation of Ms. Middleton's gross misconduct at the February 13, 2003 staff meeting and Ms. Middleton's allegation of "sexual harassment" against Mr. Williams and Ms. Mack.  (Latham Dec., ¶39-45, Ex. J, ¶61, Ex. L; Mack Dec., ¶45.)

62.     On March 3, 2003, Ms. Latham terminated Ms. Middleton's employment. (Pl. Tr. 255:20-25; 256:2; 261:7-25; 262:2-4; Latham Dec., ¶56, Ex. I; Latham Dec., ¶60, Ex. K; Ex. A to Brauner Dec., ¶13).

63.     The Complaint in this action was filed in the United States District Court, Southern District of New York, on March 3, 2006.  (Ex. A to Brauner Dec.).

Dated: September 17, 2007
        New York, New York

/s/_____
Lisa M. Brauner (LB-3305)
LITTLER MENDELSON, P.C.
885 Third Avenue, 16th Floor
New York, New York 10022-4834
Telephone: 212.583.9600
Attorneys for Defendant
Metropolitan College of New York